**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-02156-NYW-TPO

THE LUCIA FAMILY TRUST,

     Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,

     Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

     This matter is before the Court on American Family's Motion for Summary Judgment (or "Motion"). [Doc. 62].[1] Plaintiff The Lucia Family Trust ("Plaintiff" or "the Trust") has responded in opposition, [Doc. 65], and Defendant American Family Mutual Insurance Company, S.I. ("Defendant" or "American Family") has replied, [Doc. 68]. The Court has reviewed the Motion and the related briefing, the applicable case law, and the record before the Court, and concludes that oral argument would not materially assist in the resolution of the Motion. For the reasons set forth below, the Motion for Summary Judgment is respectfully **GRANTED in part** and **DENIED in part**.

---

[1] Where the Court refers to the filings made in the Electronic Case Files ("ECF") system in this action, it uses the convention [Doc. ___] and refers to the page number assigned by the ECF system, except when citing from the transcript of a deposition. When citing the transcript of a deposition, the Court uses the ECF docket number, but cites to the page and line numbers as assigned in the original transcript.

## BACKGROUND

In June 2021, non-party Daniel Unrein ("Mr. Unrein") obtained a homeowners insurance policy (the "Policy") from American Family on a property located in Denver, Colorado (the "Property").  [Doc. 62-1 at 2].  The Policy lists the Trust as an "additional insured."  [*Id.* (capitalization altered)].  After a fire occurred at the Property in September 2021, [Doc. 4 at ¶ 8], Mr. Unrein submitted a claim under the Policy, *see* [Doc. 62-2 at 1].  Mr. Unrein passed away in November 2021, and the Property is now owned by the Trust.  [Doc. 4 at ¶¶ 4–5; Doc. 62-5].  Starting in December 2021, Mr. Unrein's sister, Karen Bejarano, took over as representative of the Trust and began overseeing repairs to the Property.  [Doc. 62-5].

The repairs to the Property required asbestos abatement.  [Doc. 4 at ¶ 10; Doc. 62 at ¶¶ 9–10; Doc. 65 at 3 ¶¶ 1–2].  The first contractor selected to perform the asbestos abatement, CAT Environmental Services, LLC ("CAT"), failed to complete the job and violated several Colorado Department of Public Health and Environment regulations, among other issues.  [Doc. 4 at ¶¶ 11–16; Doc. 62 at ¶¶ 18–19; Doc. 65 at 4 ¶ 9].  The Trust then hired other contractors to complete the abatement and perform additional reconstruction work on the Property.  [Doc. 4 at ¶ 18; Doc. 62 at ¶¶ 21, 30].  Although American Family made some payments, the Trust alleges that American Family has refused to pay for approximately $112,000 of covered abatement and reconstruction work, in violation of the Policy.  [Doc. 4 at ¶ 25; Doc. 65 at 11].  The Trust brings claims for (1) breach of contract; (2) breach of the implied duty of good faith and fair dealing, which the Court also refers to as the "common law bad faith" claim; and (3) unreasonable delay and/or denial of insurance benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116,

which the Court refers to as the "statutory bad faith" claim.  *See* [Doc. 4 at ¶¶ 28–38].
American Family seeks summary judgment on all three claims.  [Doc. 62].

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is
appropriate "if the movant shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A
dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve
the issue either way.  A fact is material if under the substantive law it is essential to the
proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194
(10th Cir. 2011) (citation and quotations omitted).

If the movant demonstrates that no genuine issues of material fact exist, the
burden shifts to the non-movant to "set out specific facts showing a genuine issue for
trial."  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (quoting Fed. R.
Civ. P. 56(e)(2)).  The non-movant must point to competent evidence showing a genuine
factual issue; it cannot rely on "[u]nsubstantiated allegations" or "mere speculation,
conjecture, or surmise."  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).
In considering the evidence in the record, the Court cannot and does not weigh the
evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d
1147, 1165 (10th Cir. 2008).  At all times, the Court views the record in the light most
favorable to the nonmoving party.  *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323,
1326 (10th Cir. 2019).

**UNDISPUTED MATERIAL FACTS**

The following facts are drawn from the summary-judgment record and undisputed unless otherwise noted.

1.      A fire at the Property occurred in September 2021.  [Doc. 62 at ¶ 5; Doc. 65 at 3 ¶ 1; Doc. 4 at ¶ 8].

2.      At that time, the Property was covered by the Policy, which lists Plaintiff and Mr. Unrein as insureds.  [Doc. 62 at ¶ 2; Doc. 65 at 3 ¶ 1; Doc. 62-1].  Mr. Unrein passed away in November 2021, and the Property is now owned by the Trust.  [Doc. 62 at ¶¶ 1, 8; Doc. 65 at 3 ¶ 1; Doc. 62-5].

3.      Shortly after the fire, and before Mr. Unrein died, American Family opened a claim on the Property under the Policy.  [Doc. 62 at ¶ 6; Doc. 65 at 3 ¶ 1; Doc. 62-2].

4.      Two Policy provisions are relevant to that claim and this case.  First, the Policy's Coverage A, which applies to the "Dwelling," sets out the following:

> We will pay the cost to repair or replace the damaged part of property insured under Coverage A with material of like construction for similar use on the same premises subject to the following:
>
> 1.      Until you complete the repair or replacement of the property, we will pay the lesser of:
>         a.      the actual cash value; or
>         b.      the limit shown in the Declarations.
>
> 2.      If the repair or replacement of the property on the residence premises is completed within 12 months after the date of loss, we will pay the least of:
>         a.      our cost to repair or replace the property;
>         b.      the amount you spent to repair or replace the property; or
>         c.      the limit shown in the Declarations;
>         less any amount we paid you based on the actual cash value as described in 1.a. above.  You must promptly deliver to us the receipts for damaged property you repair or replace.

[Doc. 62 at ¶ 3; Doc. 65 at 3 ¶ 1; Doc. 62-1 at 15].

5.      Second, the Policy's Coverage B, which applies to personal property, includes "Option 14" to cover damage to personal property.  [Doc. 62 at ¶ 4; Doc. 65 at 3 ¶ 1; Doc. 62-1 at 16, 23].  Option 14 states:

> We will pay for covered damage to personal property insured under Coverage B subject to the following:
>
> 1.      Replacement Cost.
>
>     a.      Except for property listed in 2. or 3. below the following applies:
>         (1)      until you make the actual repair or replacement, we will pay only the actual cash value of the damaged property;
>         (2)      after you complete repair or replacement, we will pay the difference between the actual cash value of the damaged property and the cost to repair or replace such property;
>         (3)      if property is not repaired or replaced within one year after the date of loss, we will pay only the actual cash value of the damaged property.
>
>     b.      However, we will not pay more than the least of:
>         (1)      our cost to replace at the time of loss;
>         (2)      the amount actually and necessarily spent for replacement of an item with a similar item of like kind and quality at the time of loss;
>         (3)      the amount actually and necessarily spent for repair or restoration . . . .

[Doc. 62 at ¶ 4; Doc. 65 at 3 ¶ 1; Doc. 62-1 at 23].

6.      In October 2021, after opening the claim, American Family made an initial payment of $16,636.51 for the actual cash value of the estimated repair costs.  [Doc. 62 at ¶ 7; Doc. 65 at 3 ¶ 1; Doc. 62-3; Doc. 62-58 at 62:3–12].

7.      On December 10, 2021, Karen Bejarano, Mr. Unrein's sister, informed American Family that Mr. Unrein had passed away and that she would "tak[e] over" the

repairs to the Property on behalf of the Trust.  [Doc. 62 at ¶ 8; Doc. 65 at 3 ¶ 1; Doc. 62-5].

8.      Around that time, CAT submitted a bid to perform asbestos abatement for the interior and contents of the Property at a cost of $111,113.51.  [Doc. 62 at ¶ 9; Doc. 65 at 3 ¶ 1; Doc. 62-6].  The Trust contracted with CAT to abate the interior and contents of the Property.  [Doc. 62 at ¶ 13; Doc. 65 at 4 ¶ 5; Doc. 68 at 1 ¶ 13; Doc. 62-11].

9.      On December 31, 2021, American Family paid CAT the entire contract price of $111,113.51.  [Doc. 62 at ¶¶ 11, 14; Doc. 65 at 4 ¶¶ 3, 6; Doc. 68 at 1 ¶ 11; Doc. 62-13].  $24,960.00 of that payment was intended to cover inventory and disposal of the contents of the Property.  [Doc. 65 at 6–7 ¶ 4; Doc. 68 at 2 ¶ 4; Doc. 62-6 at 10; Doc. 62-14 at 1].[2]

10.     Between December 2021 and April 2022, Ms. Bejarano received photographs and updates from CAT that showed exterior abatement work outside the scope of the covered interior asbestos spill.  [Doc. 62 at ¶ 15; Doc. 65 at 4 ¶ 7; *see also, e.g.*, [Doc. 62-15].  In April 2022, CAT demanded that American Family pay approximately $58,000 for exterior abatement.  [Doc. 65 at 7 ¶ 7; Doc. 68 at 2 ¶ 7; Doc. 65-4].

11.     American Family requested but never received documentation needed to analyze coverage for the exterior asbestos spill.  [Doc. 62 at ¶ 16; Doc. 65 at 4 ¶ 8; Doc. 62-18; Doc. 62-45 at 128:11–130:4; Doc. 62-58 at 27:9–28:16].  Instead, American Family

---

[2] American Family disputes whether this payment violated its instructions from Ms. Bejarano but does not dispute the breakdown of the payment.  *See* [Doc. 68 at 2 ¶ 4]. The Court deems it undisputed for purposes of the Motion that $24,960 of American Family's payment to CAT covered inventory and disposal of the Property's contents.  *See* Fed. R. Civ. P. 56(e)(2).

paid CAT an additional $8,896.00 for abatement work. [Doc. 62 at ¶ 17; Doc. 65 at 4 ¶ 9; Doc. 62-19].

12. CAT filed a mechanic's lien on the Property in July 2022 for the unpaid exterior abatement costs. [Doc. 65 at 7 ¶ 10; Doc. 68 at 3 ¶ 10; Doc. 65-8]. In August 2022, American Family issued CAT's demanded $58,000 payment for exterior abatement to the Trust. [Doc. 62 at ¶ 20; Doc. 65 at 4 ¶ 10; Doc. 68 at 1 ¶ 20; Doc. 62-28; Doc. 62-29 at 2; Doc. 62-30].[3]

13. The Trust encountered "various issues" with CAT during the abatement process. [Doc. 62 at ¶ 18; Doc. 65 at 4 ¶ 9]. CAT failed to keep the Property secure and violated multiple CDPHE regulations. [Doc. 62 at ¶ 19; Doc. 65 at 4 ¶ 9; Doc. 62-22; Doc. 62-23]. The Trust fired CAT and hired another contractor, D&K Works, to repair the damage and complete the abatement. [Doc. 62 at ¶ 21; Doc. 65 at 5 ¶ 11; Doc. 62-31; Doc. 62-34; Doc. 62-35 at 1].

14. In May 2022, after abatement was complete, American Family issued a payment of $51,162.62 based on its estimate of the reconstruction costs. [Doc. 62 at ¶ 23; Doc. 65 at 5 ¶ 11; Doc. 62-27; Doc. 62-37].

15. Because CAT never provided information that would permit American Family to calculate the value of the contents of the Property, American Family paid 65%

---

[3] The Parties dispute whether this payment was for exterior abatement alone or both exterior abatement and contents documentation. [Doc. 62 at ¶ 20; Doc. 65 at 4 ¶ 10]. The exact scope of work covered by the $58,000 payment to CAT is immaterial to the Motion. Regardless, although American Family may have purported to condition the payment on CAT's providing the contents documentation, the record is clear that the payment itself covered CAT's exterior abatement work. [Doc. 62-28; Doc. 62-29 at 2; Doc. 62-30]. The Court deems this fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2).

of the Policy limit on contents—or $174,850—to the Trust, as well as an additional $12,554.02 under the "dwelling" coverage.  [Doc. 62 at ¶¶ 24–25; Doc. 65 at 5 ¶ 11; Doc. 62-44; Doc. 62-45 at 65:14–21; Doc. 62-58 at 46:7–47:2, 78:2–16].

16.    In September 2022, American Family extended the deadline to complete repairs to March 2023.  [Doc. 62 at ¶ 26; Doc. 65 at 5 ¶ 11; Doc. 62-46].

17.    After several rounds of communications between the Trust and American Family, the Trust ultimately demanded $33,370.00 for interior abatement work by D&K Works, $98,600.81 for reconstruction costs, $24,960 for personal property, and $6,050.63 for miscellaneous charges by CAT, for a total of $162,981.44.  *See* [Doc. 62 at ¶¶ 28–32; Doc. 65 at 5 ¶ 13; Doc. 62-51 at 1].  The Trust supported its requests for reconstruction costs with invoices from Aspen West Construction LLC ("Aspen West").  [Doc. 62 at ¶ 30; Doc. 65 at 5 ¶ 13; Doc. 62-49 at 2–12; Doc. 62-51 at 5–30]; *see also* [Doc. 62-57].  The $98,600.81 in reconstruction costs includes $27,008.00 in "contractor's profit and overhead" for Aspen West.  [Doc. 62 at ¶ 31; Doc. 65 at 5 ¶ 13; Doc. 62-51 at 5, 30].

18.    American Family's representatives testified that American Family pays overhead and profit when a licensed general contractor is retained.  [Doc. 62 at ¶ 34; Doc. 65 at 5 ¶ 15; Doc. 62-45 at 159:11–14; Doc. 62-58 at 84:18–85:9, 88:10–18].

19.    Aspen West is owned by the Bejarano family and is not licensed to do construction work in Denver.  [Doc. 62 at ¶ 35; Doc. 65 at 5 ¶ 16; Doc. 62-55; Doc. 62-56; Doc. 62-57; Doc. 62-60 at 68:21–69:24].

20.    Nor did the Trust provide licensing or supporting documentation to American Family to substantiate its request for Aspen West's overhead and profit.  [Doc. 62 at ¶ 36; Doc. 65 at 5 ¶ 16; Doc. 62-45 at 154:22–155:24; Doc. 62-58 at 87:12–88:18].

21.    Ms. Bejarano and the Trust admit that the Trust did not retain a general contractor or public adjuster for the reconstruction.  [Doc. 62 at ¶ 37; Doc. 65 at 5 ¶ 16; Doc. 62-26 at 5 ¶ 7; Doc. 62-59 at 68:10–70:1].

22.    In June 2023, in response to the Trust's demand for payment, American Family updated its estimate for the total cost of coverage on the Property "based on the documentation that was received" and issued a payment of $50,940.31 to the Trust.  [Doc. 62 at ¶ 38; Doc. 65 at 5 ¶ 16; Doc. 62-54 at 1].

## ANALYSIS

## I.    Breach of Contract Claim

Under Colorado law, a breach of contract claim includes four elements:  (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). To prevail on a claim for breach of insurance contract, the insured must first demonstrate coverage under the policy.  *Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1260 (10th Cir. 2020) (citing *Rodriguez ex rel. Rodriguez v. Safeco Ins. Co. of Am.*, 821 P.2d 849, 853 (Colo. App. 1991)).  Interpretation of an insurance policy is a question of law that courts resolve using ordinary principles of contract interpretation. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).  When interpreting an insurance contract, the Court is "wary of rewriting provisions, and . . . give[s] the words contained in the contract their plain and ordinary meaning, unless contrary intent is evidenced in the policy."  *Id.*

American Family seeks summary judgment against Plaintiff's demand for costs of interior abatement work by D&K Works, overhead and profit for Aspen West, and reimbursement of the personal property payment to CAT. [Doc. 62 at 13–14]. In its Reply, American Family argues that it is also entitled to summary judgment against Plaintiff's demand for additional reconstruction costs. [Doc. 68 at 4–5]. Broadly, American Family contends that Plaintiff cannot show that these amounts were covered and owed under the Policy, so there is no genuine dispute that American Family fulfilled its coverage obligations and did not breach the Policy. [Doc. 62 at 14–15; Doc. 68 at 3–5].

American Family's argument depends on its interpretation of the Policy as only providing coverage for costs actually "incurred" by Plaintiff. [Doc. 62 at 13–14]. Plaintiff does not dispute or address this position in its Response. [Doc. 65 at 11–12]. Rather, Plaintiff appears to argue that American Family must pay any costs demanded under the Policy. *See* [*id.*]. The Court respectfully agrees with American Family. With respect to the Property, the Policy limits American Family's coverage obligation to the actual cash value of the property, American Family's "cost to repair or replace the [P]roperty," or "the amount [the insured] spent to repair or replace the [P]roperty." [Doc. 62-1 at 15]. As for personal property, the Policy provides coverage for actual cash value, American Family's "cost to replace at the time of loss," or the "amount actually and necessarily spent" to replace, repair, or restore any personal property. [*Id.* at 23]. Thus, when American Family makes payments for costs other than the property's actual cash value, the Policy's plain text requires American Family to provide coverage for either American Family's "cost" or the amount "spent" by the insured. With this in mind, the Court considers each category of costs demanded by the Trust.

A.      **Interior Abatement Work**

The Trust demands payment for the $33,370.00 of interior abatement work by D&K

Works.  [Doc. 62-51 at 1; Doc. 65 at 11].  American Family contends that this amount was

included in its June 2023 payment of $50,941.31, relying upon the correspondence from

the adjuster indicating a payment in the amount of $50,940.31 had been issued to the

trustee and the Trust.  [Doc. 62 at 14; Doc. 62-54 at 1, 9 (line 242)].  The Trust does not

respond to this argument and asserts that the $33,370.00 amount was not paid because

American Family "could not produce such check evidencing the payment."  [Doc. 65 at 5

¶ 14; *id.* at 14].  The Trust does not explain why American Family must produce a check

for this exact amount to demonstrate that it paid for the abatement work by D&K Works.

Nor does the Trust point to any evidence demonstrating a factual dispute as to whether

the payment for interior abatement work was included in the June 2023 payment.

As American Family points out, the documents associated with the June 2023

payment indicate that the payment accounted for the $33,370.00 of work by D&K Works.

*See* [Doc. 62-54 at 9 (line item 242)].  The D&K Works invoice amount was included in

the "General" category of expenses for American Family's June 2023 estimate.  [*Id.*].  The

total General expenses, less the value of the $24,960 personal property payment to CAT,[4]

were then included in American Family's total "Estimate Recap" for Coverage A—the

---

[4] The calculated "General" expenses amount to $219,941.70 but include a $24,960
payment to CAT.  [Doc. 62-54 at 9].  That $24,960 payment covered personal property,
not the Property itself.  *See supra* note 2; *see also* [Doc. 62-54 at 8].  Thus, American
Family's June 2023 estimate subtracts $24,960 from $219,941.70 and lists the difference,
$194,981.70, as the total General expenses for the Estimate Recap for "Coverage A –
Dwelling."  [Doc. 62-54 at 7–8].  The total Estimate Recap for Coverage A was used to
calculate the June 2023 payment to the Trust.  [*Id.* at 5].  In short, the undisputed estimate
used to calculate the June 2023 payment includes the $33,370.00 invoice for D&K
Works's interior abatement work.  [*Id.* at 9 (line 242)].

coverage on the Property. [*Id.* at 7]. And the Estimate Recap for Coverage A was used to calculate the amount of the June 2023 payment to the Trust. [*Id.* at 5]. Plaintiff has not adduced sufficient evidence to establish that there is a genuine issue of material fact as to whether American Family provided coverage for the $33,370.00 of interior abatement work by D&K Works, and cannot simply rely on its factually unsupported arguments to do so. *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024–25 (10th Cir. 1992) ("[W]hen a movant claims that there is no genuine issue for trial because a material fact is undisputed, the nonmovant must do more than refer to allegations of counsel contained in a brief to withstand summary judgment. Rather, sufficient evidence (pertinent to the material issue) must be identified by reference . . . . In the absence of such specific reference, we will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury."). Accordingly, Defendant's Motion for Summary Judgment respectfully **GRANTED** insofar as Plaintiff asserts a breach of contract claim based on American Family's failure to pay this amount.

## B.    Overhead and Profit

American Family argues that Plaintiff cannot adduce evidence showing that it was entitled to coverage for Aspen West's overhead and profit. [Doc. 62 at 13–14]. As American Family puts it, "[t]here is no evidence Plaintiff agreed to pay unearned overhead and profit amounts for Aspen West to supervise work it is not even qualified to perform . . ., no evidence Aspen West did in fact supervise, and no evidence these costs were incurred by any other general contractor." [*Id.* at 13]. Plaintiff does not dispute this point and instead "[a]ssume[s], for purposes of [the Motion] only, that American Family is right

in its argument." [Doc. 65 at 12]. Plaintiff identifies no evidence showing that it actually "spent" or owed any amount to Aspen West—a business owned by the Bejarano family—for overhead and profit. To the extent Plaintiff contests the Motion on this point, it fails to "set forth specific facts" demonstrating a genuine factual issue as to whether Aspen West's overhead and profit were covered under the Policy. *Christy v. Travelers Indem. Co. of Am.*, 810 F.3d 1220, 1233 (10th Cir. 2016) (quotation omitted). The Motion is respectfully **GRANTED** insofar as Plaintiff asserts a breach of contract claim for American Family's failure to pay for Aspen West's overhead and profit.

### C.    Personal Property

American Family next argues that "Plaintiff cannot create a genuine dispute that it incurred $24,960 of unpaid contents amounts." [Doc. 62 at 14]. American Family contends that the $24,960 amount was paid to CAT for abating the contents of the Property. [*Id.*]. Because no information was available to determine the cost to repair or replace the contents, American Family paid 65% of the Policy limit for contents to approximate the actual cash value of the lost personal property. [*Id.*]; *see also* [Doc. 62-1 at 23 ("[U]ntil you make the actual repair or replacement, we will pay only the actual cash value of the damaged property.")].

Plaintiff responds that it is entitled to the $24,960 because American Family paid that amount to CAT without authorization. [Doc. 65 at 12]. Even assuming Plaintiff is correct that American Family lacked authorization to make that payment, Plaintiff fails to explain why American Family should now be required to duplicate the payment to the Trust. Plaintiff points to no Policy provision, other evidence, or any legal authority to support its position that when American Family prematurely pays a contractor for the

contractor's work, American Family must then pay the same amount to the insured as damages.  This conclusory argument cannot create a genuine issue for trial.  *Bones*, 366 F.3d at 875.

Alternatively, Plaintiff argues that because American Family included the $24,960 payment in Plaintiff's total "personal property damage," the amount should be paid to Plaintiff.  [Doc. 65 at 12]; *see also* [Doc. 65-11 at 48:24–49:17].  This argument implicitly assumes that anything included in "personal property damage" must represent Plaintiff's loss.  But as Plaintiff itself contends, the $24,960 paid to CAT was for abatement work related to the contents of the Property, not to represent the actual cash value or replacement cost of the lost personal property.  *See* [Doc. 65 at 6–7 ¶ 4; Doc. 62-6 at 10; Doc. 62-54 at 9 (line item 240)].  Plaintiff identifies no record evidence to support its contention that the $24,960 reflects the value of the lost personal property that it replaced and provided documentation to American Family.  Nor does Plaintiff adduce any evidence that American Family's $174,850 payment was insufficient to cover the loss of personal property.  The Court recognizes that CAT's failure to inventory the contents of the Property, combined with Mr. Unrein's death, effectively prevents the Trust from determining the value of the lost personal property.  But Plaintiff points to no Policy provision or other authority to support its theory that CAT's failure to complete its contract requires American Family to pay this portion of the contract price twice—once to CAT and once to the Trust.  Such speculation is insufficient to avoid summary judgment.  *Bones*, 366 F.3d at 875.  Accordingly, the Motion is respectfully **GRANTED** insofar as Plaintiff asserts a breach of contract claim for American Family's failure to pay the contents portion of CAT's contract price to the Trust as part of the Trust's personal property coverage.

### D.      Reconstruction Costs

Beyond generic arguments about Plaintiff's failure to establish that American Family breached the Policy, the Motion does not specifically address Plaintiff's demand for reconstruction costs. [Doc. 62 at 13–15]. Indeed, the only mention of a dispute over reconstruction costs is limited to overhead and profit allegedly incurred by Aspen West. [*Id.* at 2]. The Parties agree that prior to the initiation of suit, Plaintiff had an outstanding demand for unpaid reconstruction costs. [*Id.* at ¶ 32; Doc. 65 at 5 ¶ 13]; *see also* [Doc. 62-51 at 1]. But in its Motion for Summary Judgment, American Family only refers to three categories of benefits—for interior abatement; overhead and profit; and personal property—and does not address reconstruction costs at all. *See generally* [Doc. 62]. It generally argues that Plaintiff cannot meet its burden to show entitlement of any amounts pursuant to the Policy because it did not disclose any construction related experts. [*Id.* at 16].

As an initial matter, it is not clear that any construction related experts are required for Plaintiff to prevail on its breach of contract claim for reconstruction costs. Plaintiff refutes American Family's arguments that it needed more documentation for full payment of Aspen West's reconstruction costs by pointing to its correspondence. [Doc. 65 at 14–15]. In its Reply, American Family addresses the substance of the reconstruction costs specifically for the first, arguing inter alia that "[o]ffering evidence of claimed amounts, without evidence the amounts were covered, reasonable and necessary, incurred, and owed, does not prevent summary judgment" and that "[w]ith no construction experts, Plaintiff cannot establish the unpaid [reconstruction] amounts were related to the fire, reasonable, for like kind repairs, for required code upgrades, or for reasonable

supervision." [Doc. 68 at 4]. This argument is waived. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[A] party waives issues and arguments raised for the first time in a reply brief.").

Accordingly, the Motion is respectfully **DENIED** with respect to Plaintiff's breach of contract claim for these reconstruction costs.

## II.    Bad Faith Claims

The Court addresses Plaintiff's statutory and common law bad faith claims in tandem. Starting with the former, Colorado statutes impose certain obligations on insurance companies, instructing that insurers "shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). To succeed on a claim under this statute, an insured must establish that (1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or denial was without a reasonable basis. *See Am. Fam. Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018).

Insurers also have common law duties to deal in good faith with their insureds. *Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo. 2004). "Due to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort." *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004) (quoting *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)). "The requirements of a common law bad faith claim under Colorado law are heightened in comparison to those of a statutory bad faith claim." *Butman Fam. Inv. Ltd. P'ship v. Owners Ins. Co.*, No. 19-cv-01638-KLM, 2020 WL

1470801, at *8 (D. Colo. Mar. 25, 2020).  In addition to demonstrating that the insurer delayed or denied benefits without a reasonable basis, "a common law insurance bad faith claim requires the insured to [prove] . . . that the insurer knowingly or recklessly disregarded the validity of the insured's claim."  *Id.*

"The reasonableness of the insurer's conduct is determined objectively and is 'based on proof of industry standards.'"  *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (quoting *Goodson*, 89 P.3d at 415); *see also Bankr. Est. of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008) ("[T]he question is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim."). Typically, whether an insurance company acted reasonably in the handling of a claim for insurance benefits is a "question of fact for the jury."  *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012).  But "in appropriate circumstances," such as "when there are no genuine issues of material fact, reasonableness may be decided as a matter of law."  *Id.*

### A.    Statutory Bad Faith

The Court's analysis of the Trust's statutory claim is limited by the Court's partial grant of summary judgment on the breach of contract claim.  Specifically, the Court has concluded that Plaintiff's claims for Policy benefits for Aspen West's overhead and profit and personal property costs paid to CAT fail as a matter of law.  As a result, Plaintiff cannot succeed on a statutory bad faith claim for unreasonable delay or denial based on American Family's refusal to pay uncovered benefits.  *See TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1201 (D. Colo. 2018) (to prevail on statutory bad faith claim, the plaintiff must show that "benefits were owed under the policy").  "[W]here

no benefits are owed, then payment of those benefits cannot, as a matter of law, have been unreasonably delayed to the insured or denied by the insurer." *Keller v. State Farm Mut. Auto. Ins. Co.*, No. 22-cv-00474-CMA-KAS, 2023 WL 6048790, at *9 (D. Colo. Sept. 15, 2023), *recommendation adopted by* 2023 WL 7458357 (D. Colo. Oct. 2, 2023). Accordingly, the Motion is respectfully **GRANTED** insofar as it seeks summary judgment against Plaintiff's statutory bad faith claim for undue delay or denial of benefits for Aspen West's overhead and profit and the personal property payment to CAT.

Similarly, Plaintiff cannot pursue a statutory bad faith claim for denial of D&K Works's interior abatement costs because the record reflects that those benefits have, in fact, been paid. *See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) ("It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's *only claimed damages flowed from the denial of coverage*." (emphasis added)). But Plaintiff could theoretically pursue a statutory bad faith claim for undue delay based on the already-paid abatement costs. *See, e.g.*, *Barriga*, 418 P.3d at 1185 (observing that an award for statutory bad faith may be based on delayed, but eventually paid, benefits). But here, Plaintiff does not adduce any evidence that would permit a jury to conclude that those already-paid abatement costs were delayed. Instead, it simply argues that "American Family's argument that the interior abatement cost of $33,370.00 was paid . . . is also quite unreasonable in light of the fact that American Family could not produce such check evidencing the payment." [Doc. 65 at 14]. This conclusory argument, based on Plaintiff's subjective and unsupported belief that American Family was required to produce a check evidencing payment, is insufficient to create a genuine issue of material fact to avoid

summary judgment.  *See 5555 Boatworks Drive LLC v. Owners Ins. Co.*, No. 16-cv-02749-CMA-MJW, 2017 WL 6361398, at *5 (D. Colo. Dec. 13, 2017).

For the remaining category of claimed benefits—the reconstruction costs—the Court considers whether there is a genuine issue of material fact that American Family unreasonably delayed or denied payment in adjusting Plaintiff's insurance coverage. American Family argues that it "paid dwelling and contents payments" that were "covered and substantiated."  [Doc. 62 at 18].  Because American Family "did not receive documentation needed to pay more," American Family argues that it had a reasonable basis to deny coverage for further costs that lacked adequate documentation.  [*Id.*]. Plaintiff counters that American Family failed to request "additional invoice documentation" or inform the Trust how or why the submitted Aspen West invoices were insufficient.  [Doc. 65 at 15–16].  Plaintiff contends that this creates a triable issue as to whether American Family's conduct was reasonable.  [*Id.* at 16].  The Court respectfully agrees with Plaintiff.

The Colorado Supreme Court has explained that the reasonableness of an insurer's conduct is determined using insurance industry standards.  *Schultz*, 429 P.3d at 847.  American Family's Motion does not address industry standards at all—either by attacking Plaintiff's evidence of industry standards (or lack thereof) or by providing its own evidence that it complied with industry standards.  *See Jewell v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-02536-KLM, 2020 WL 1627348, at *4–5 (D. Colo. Feb. 26, 2020)

(denying summary judgment on bad faith claim where defendant failed to address industry standards and thus did not meet its initial burden on summary judgment).[5]

Based on the record before it, this Court respectfully concludes that there are genuine issues of material facts that preclude summary judgment. After Plaintiff demanded coverage for the work described in the Aspen West invoices, American Family issued a June 2023 payment that appears to cover some of those expenses. *See* [Doc. 62-51; Doc. 62-54 at 1]. But beyond cursory references to "the attached estimate" and Plaintiff's "documentation," American Family did not explain—either at the time or in its Motion—which invoices would be covered and how it reached that conclusion. [Doc. 62-54 at 1; Doc. 62 at 18]. And Plaintiff cites to various pieces of evidence to demonstrate that it provided American Family the requested documentation to support its request for reconstruction benefits. *See* [Doc. 65 at 14–15]. At summary judgment, the Court cannot weigh the Parties' communications and supporting documentation to assess whether American Family reasonably determined that the Aspen West invoices were insufficient to establish coverage for reconstruction costs and reasonably conveyed that determination to the Trust. *See Foote v. State Farm Fire & Cas. Co.*, No. 20-cv-02342-RMR-MEH, 2023 WL 8780763, at *4 (D. Colo. Dec. 19, 2023) ("It is not for the Court to decide at this stage the credibility of witnesses or the weight to give each piece of evidence; that job must fall to the jury, who is best positioned to make such

---

[5] Defendant briefly—and belatedly—addresses industry standards in its Reply. [Doc. 68 at 10–11]. This argument is waived, *M.D. Mark, Inc.*, 565 F.3d at 768 n.7, and is insufficient to satisfy Defendant's summary-judgment burden, *see Jewell*, 2020 WL 1627348, at *4–5 (denying summary judgment due to defendant's failure to address industry standards in its motion, despite defendant's attempt to address the issue in its reply); *Montoya v. Allstate Ins. Co.*, No. 14-cv-02943-LTB-KMT, 2016 WL 192274, at *4 (D. Colo. Jan. 15, 2016).

determinations."). These are questions of fact for the jury to resolve at trial. *See Vaccaro*, 275 P.3d at 759. The Motion is respectfully **DENIED** as to Plaintiff's statutory bad faith claim based on its claim for reconstruction costs.[6]

### B.    Common Law Bad Faith

When a plaintiff alleges bad faith based solely on a "failure to pay benefits," "there can be no bad faith where there is no coverage." *Tom's Urb. Master LLC v. Fed. Ins. Co.*, No. 20-cv-03407-PAB-SKC, 2022 WL 974654, at *8 (D. Colo. Mar. 31, 2022) (citations omitted); *see also MarkWest Hydrocarbon*, 558 F.3d at 1193 ("It is settled law in Colorado that a bad faith claim must fail if . . . coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage."). But in Colorado, a common law bad faith claim "exists independently from the liability imposed by the insurance contract." *Flickinger v. Ninth Dist. Prod. Credit Ass'n of Wichita*, 824 P.2d 19, 24 (Colo. App. 1991). In other words, "Colorado recognizes the viability of a [common law] claim of bad faith even if the express terms of the contract have been honored by the insurer." *Dunn v. Am. Fam. Ins.*, 251 P.3d 1232, 1235 (Colo. App. 2010). A common law bad faith claim can survive a finding of no coverage if the claim "is based not on the denial of coverage, but on the defendant's alleged bad faith in the investigation, defense, handling, or settling of a claim." *Palm v. Esurance Prop. & Cas. Ins. Co.*, No. 20-cv-02838-NYW-STV, 2023 WL 2503511, at *5 (D. Colo. Mar. 14, 2023).

---

[6] Because the Court finds a genuine dispute of fact as to whether American Family acted reasonably, the Court need not reach the Parties' waiver arguments. [Doc. 65 at 15–16; Doc. 68 at 9–10]; *see also Gallegos v. Safeco Ins. Co. of Am.*, 646 F. App'x 689, 694 (10th Cir. 2016) (observing that, under Colorado law, an insurer must raise or reserve all known defenses to coverage or risk waiver, but "coverage, or restrictions on coverage, cannot be extended by the doctrine of waiver" (quotation omitted)). The Parties may raise these arguments, if appropriate, at a later stage.

Based on the record before it and construing all inferences in Plaintiff's favor, as it must, the Court finds that genuine factual issues preclude summary judgment on the common law bad faith claim. These disputes include, but are not limited to, whether American Family acted unreasonably and whether it knew of or recklessly disregarded its alleged unreasonableness when it adjusted Plaintiff's claim, including but not limited to its failure to pay Plaintiff the entirety of the claimed reconstruction costs (excluding interior abatement work and overhead and profit) after receiving the documentation it requested from Plaintiff. *See* [Doc. 65 at 14–16]; *COPIC*, 192 P.3d at 524 ("[W]hat constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury."); *see also Vivos Therapeutics, Inc. v. Ortho-Tain, Inc.*, 142 F.4th 1262, 1268 n.3 (10th Cir. 2025) ("As a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial." (quotation omitted)). Accordingly, the Motion is respectfully **DENIED** to the extent Plaintiff asserts a common law bad faith claim.

### CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)    American Family's Motion for Summary Judgment [Doc. 62] is **GRANTED in part** and **DENIED in part**;

(2)    The Motion is **GRANTED** to the extent Plaintiff's breach of contract and statutory bad faith claims seek to recover for interior abatement work, overhead and profit for Aspen West, and the personal property payment to CAT;

(3)    The Motion is **DENIED** to the extent Plaintiff's breach of contract and statutory

bad faith claims seek to recover for reconstruction work;

(4)    The Motion is **DENIED** as to Plaintiff's common law bad faith claim; and

(4)    A telephonic Status Conference is **SET** for October 3, 2025 at 1:00 p.m. for

purposes of setting a Final Pretrial/Trial Preparation Conference and trial in

this matter.  Counsel for the Parties shall participate using the following dial-

in information:  571-353-2301; Access Code: 783456374.


DATED:  September 25, 2025                    BY THE COURT:


                                             _____
                                             Nina Y. Wang
                                             United States District Judge