**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-02156-NYW-TPO

THE LUCIA FAMILY TRUST,

      Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,

      Defendant.

---

## ORDER ON EVIDENTIARY MOTIONS

---

This matter is before the Court on (1) American Family's Motion to Exclude or Limit Brian Seigal Pursuant to Fed. R. Evid. 702 ("Motion to Exclude"), [Doc. 55]; and (2) Plaintiff's Motion *in Limine* to Prevent Defendant from Raising the Issue of Designation of Non-Party at Fault at Trial ("Motion in Limine"), [Doc. 61]. Both Motions are fully briefed and ripe for disposition. *See* [Doc. 56; Doc. 60; Doc. 66; Doc. 67]. The Court finds that oral argument would not materially assist in resolving the Motions. For the reasons set forth below, the Motion to Exclude is respectfully **GRANTED in part** and **DENIED in part**, and the Motion in Limine is respectfully **GRANTED**.

## BACKGROUND

The Court has recently set out the facts of this case in detail, *see* [Doc. 73 at 4–9], and repeats them here only as pertinent to the Motions. At all relevant times, Plaintiff The Lucia Family Trust ("Plaintiff" or the "Trust") and non-party Daniel Unrein had a homeowners insurance policy (the "Policy") with Defendant American Family Mutual Insurance Company, S.I. ("Defendant" or "American Family"). [Doc. 4 at ¶ 6]. The Policy

covered a property located in Denver, Colorado (the "Property"). [*Id.* at ¶¶ 5–6]. A fire occurred at the Property in September 2021, and Mr. Unrein submitted a claim under the Policy. [*Id.* at ¶ 8]. Mr. Unrein passed away in November 2021, leaving the Trust as the remaining insured listed in the Policy. [*Id.* at ¶ 9].

The repairs to the Property required asbestos abatement. [*Id.* at ¶ 10]. The first contractor selected to perform the abatement, CAT Environmental Services, LLC ("CAT"), failed to complete the job and violated several Colorado Department of Public Health and Environment regulations, among other issues. [*Id.* at ¶¶ 11–16; Doc. 73 at 7 ¶ 13]. The Trust then hired other contractors to complete the abatement and perform additional reconstruction work on the Property. [Doc. 4 at ¶ 18]. Although American Family made some payments, the Trust alleges that American Family has refused to pay for approximately $112,000 of covered abatement and reconstruction work, in violation of the Policy.[1]  [*Id.* at ¶ 25].

The Trust initiated this action in state court in July 2023, bringing claims for (1) breach of contract; (2) breach of the implied duty of good faith and fair dealing, which the Court also refers to as the "common law bad faith" claim; and (3) unreasonable delay and/or denial of insurance benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116, which the Court refers to as the "statutory bad faith" claim. *See* [Doc. 4 at ¶¶ 28–38]. American Family removed the case to federal court, [Doc. 1], and filed a Designation of Non-Party

---

[1] In its Memorandum Opinion and Order dated September 25, 2025, this Court granted summary judgment in favor of American Family on Plaintiff's breach of contract and statutory bad faith claims arising from interior abatement work, overhead and profit, and personal property. [Doc. 73 at 22–23]. Thus, the amount in controversy should be reduced by the amounts associated with those categories of benefits found to be not triable.

at Fault ("Designation"), [Doc. 20].  The Designation names CAT as a nonparty at fault pursuant to Colo. Rev. Stat. § 13-21-111.5.  [Doc. 20].  The Court recently granted partial summary judgment in Defendant's favor, limiting the claims to Plaintiff's breach of contract claim as to certain reconstruction costs; statutory bad faith arising from the delay or denial of certain reconstruction costs, and common law bad faith.  [Doc. 73 at 22–23].

In addition to their briefing on American Family's summary judgment motion, the Parties filed the instant Motions to raise separate evidentiary issues.  First, American Family's Motion to Exclude seeks to exclude certain opinions of Plaintiff's insurance industry standards expert, Brian Seigal, pursuant to Federal Rule of Evidence 702.  *See* [Doc. 55].  Second, Plaintiff's Motion in Limine asks the Court to preclude American Family from invoking the Designation—and the fault of CAT—at trial.  [Doc. 61].  The Court considers the Parties' arguments below.

## LEGAL STANDARDS

### I. Motions to Exclude Under Rule 702

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  As noted by the Advisory Committee when the Rule was first promulgated, "[a]n intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge."  Fed. R. Evid. 702 advisory committee's note.

It is well established that trial courts are charged with the responsibility of acting as gatekeepers to ensure that expert testimony or evidence admitted is not only relevant, but reliable.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588–89 (1993).  To fulfill that gatekeeper function, courts within the Tenth Circuit conduct a two-part inquiry.  First, courts consider whether the expert's proffered testimony has a reliable basis in the knowledge and experience of his or her discipline by assessing the expert's qualifications and the admissibility of the proffered evidence, i.e., whether the reasoning or methodology underlying the testimony is valid.  *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006) (citing *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232–33 (10th Cir. 2005)).  Second, courts look to whether the proposed testimony is sufficiently relevant to the issues presented to the factfinder.  *See id.*  The party offering the expert opinion bears the burden of establishing its admissibility, including all foundational requirements, by a preponderance of the evidence.  *United States v. Nacchio*, 555 F.3d 1234, 1251 (10th Cir. 2009) (en banc); *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008).

II.    **Motions in Limine**

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question, which the court may provide at its discretion to aid the parties in formulating trial strategy."  *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (quotation omitted).  Although

neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence contemplate these motions, motions in limine enable the Court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *United States v. Cline*, 188 F. Supp. 2d 1287, 1291 (D. Kan. 2002) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (further citations omitted)). A limine order can save litigants time, cost, and effort by resolving evidentiary questions in advance of trial. *Id.* "Such rulings, however, are often better left until trial when the Court can assess the question in light of the evidence presented at trial." *Wheatridge Off., LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1201 (D. Colo. 2022). The decision of whether and how to rule on a motion in limine lies within the district court's discretion. *Jones*, 59 F.3d at 146.

## ANALYSIS

### I.     Motion to Exclude

#### A.     Qualifications

American Family first attacks Mr. Seigal's qualifications as an expert under Rule 702(a). [Doc. 55 at 4–6]. American Family argues that Mr. Seigal "has not worked in the insurance industry since 2018"—focusing instead on consulting work—and that his industry experience "did not involve property damage claims." [*Id.* at 5]; *see also* [Doc. 55-1].[2] Plaintiff responds that Mr. Seigal has training and experience in claim adjustment

---

[2] In its Reply, American Family raises new arguments that relate to the sufficiency of Mr. Seigal's facts and data under Rule 702(b). *See* [Doc. 60 at 3–6]. These arguments are waived. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[A] party waives issues and arguments raised for the first time in a reply brief.").

and other aspects of the insurance industry and that "Mr. Seigal has handled thousands of first-party claims."  [Doc. 56 at 4–7].

Rule 702 requires an expert to be qualified by "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  However, an expert "should not be required to satisfy an overly narrow test of his own qualifications."  *Gardner v. Gen. Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974).  "Rule 702 does not impose an 'overly rigorous' requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training."  *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011) (quoting *United States v. Velasquez*, 64 F.3d 844, 849 (3d Cir. 1995)).  "[A]s long as an expert stays within the reasonable confines of his subject area . . . a lack of specialization does not affect the admissibility of the expert opinion, but only its weight."  *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (cleaned up).  "The trial court should not exclude expert testimony simply because the court feels that the proffered witness is not the most qualified or does not have the specialization considered most appropriate by the court."  *Cruz v. City & Cnty. of Denver*, No. 21-cv-03388-KLM, 2023 WL 4418259, at *5 (D. Colo. July 7, 2023) (quotation omitted).

At the outset, the Court notes that it recently found Mr. Seigal qualified as an expert in insurance industry standards regarding underinsured motorist ("UIM") claims.  *See Pacheco v. State Farm Mut. Auto. Ins. Co.*, No. 23-cv-00305-NYW-SBP, 2024 WL 3834166, at *3–4 (D. Colo. Aug. 15, 2024).  The Court reached that decision despite the fact that "Mr. Seigal's experience in the insurance industry is not limited to or highly concentrated in automobile liability insurance or UIM coverage or in handling those

claims."  *Id.* at *3.   But Mr. Seigal's report reflected his familiarity with the industry standards for handling UIM claims, "and his experience supervising claims handling practices and reviewing thousands of claims files to review whether standard practices were followed cannot be ignored."  *Id.* at *3–4.   Accordingly, the Court found that Mr. Seigal's lack of experience in UIM claims was fodder for cross-examination, not a basis for disqualifying Mr. Seigal as an expert witness.  *Id.* at *4.

American Family's arguments here are essentially the same arguments the Court rejected in *Pacheco*.  To the extent American Family contends that Mr. Seigal must have specific experience in "homeowners property damage claims involving asbestos abatement," [Doc. 60 at 2 (capitalization altered)], that is an "overly narrow" test of Mr. Seigal's qualifications, *Gardner*, 507 F.2d at 528.  Rather, Mr. Seigal's report reflects a familiarity with the applicable industry and statutory standards for handling property claims in Colorado.  [Doc. 55-4 at 2, 83–96].  Mr. Seigal has "passed the licensing exams for a Colorado Property & Casualty and Life Producer."  [*Id.* at 2].  And his curriculum vitae and report describe over 20 years of experience at various stages of the claims-handling process, including "reviewing and auditing thousands of open and closed claim files from 50+ claims departments for the adherence to company standards and practices."  [*Id.*; Doc. 55-1].  Mr. Seigal's more recent pivot to consulting work does not undermine his extensive industry experience.  *Cf. Stoker v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-03569-NYW, 2021 WL 4201583, at *4 (D. Colo. May 6, 2021) (finding attorney qualified as insurance industry standards expert based on his knowledge and experience in insurance litigation and consulting, even though attorney "ha[d] not worked

himself as a claims handler").  As in *Pacheco*, Mr. Seigal need not be the "most qualified" to opine on the precise type of insurance claim in this case.  2024 WL 3834166, at *4.

The Court accordingly finds that Mr. Seigal's opinions regarding American Family's handling of Plaintiff's claim are "within the reasonable confines of his subject area" and will assist the jury in evaluating American Family's conduct.  *See Ralston*, 275 F.3d at 970; Fed. R. Evid. 702(a).  The Motion to Exclude is respectfully **DENIED** to the extent American Family challenges Mr. Seigal's qualifications.  American Family may explore Mr. Seigal's consulting work and lack of specialization during cross-examination.

### B.    Methodology

American Family next attacks Mr. Seigal's methodology.  American Family faults Mr. Seigal for failing to analyze American Family's conduct based on the information it had at the time it handled Plaintiff's claim.  [Doc. 55 at 7–8].  Moreover, according to American Family, Mr. Seigal improperly assumes that "liability was reasonably clear" without considering whether Plaintiff provided American Family with supporting documentation for its claim.  [*Id.* at 9 (quoting [Doc. 55-4 at 103])]].  Plaintiff responds that Mr. Seigal's methodology boils down to explaining the applicable industry standards, reviewing the facts of the case, and analyzing whether American Family's claim-handling practices complied with Mr. Seigal's understanding of the industry standards.  [Doc. 56 at 7–8].  Plaintiff contends that courts have approved such an approach as a reliable methodology for an insurance industry expert.  [*Id.* (citing *George v. Metro. Prop. & Cas. Ins. Co.*, No. 18-cv-01663-PAB-SKC, 2020 WL 70424, at *12 (D. Colo. Jan. 2, 2020))].

Mr. Seigal describes his methodology as follows:

1.    Before accepting the engagement, I conducted a conflict check.
2.    I evaluated the material with a neutral mindset.

3.      I read the Complaint and Answer.
4.      I reviewed the claim file and policies.
5.      I noted questions and areas of the claim that were unclear.
6.      I read the correspondence and all other pertinent documents produced for my review.
7.      When applicable I requested additional documents to review.
8.      I reviewed industry norms and standards, statutes, case law, etc.
9.      I developed my opinions and recommendations.
10.     I drafted this report and created appendices for reference. The content of these may be used as exhibits during trial.

[Doc. 55-4 at 3]. The Court agrees with Plaintiff that Mr. Seigal's methodology essentially involved reviewing the facts of the case and relevant documents and then analyzing them based on his knowledge and experience of insurance industry standards. Courts routinely find that such a methodology is reliable for an insurance industry expert. *See, e.g.*, *Stoker*, 2021 WL 4201583, at *5 (first citing *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 925 (D. Colo. 2017); and then citing *Domokos v. Shelter Mut. Ins. Co.*, No. 18-cv-00903-WJM-NRN, 2020 WL 869854, at *5 (D. Colo. Feb. 21, 2020)); *George*, 2020 WL 70424, at *13.

In light of Mr. Seigal's methodology, the Court respectfully disagrees with American Family that Mr. Seigal failed to evaluate American Family's conduct based on the information available at the time. Mr. Seigal's report spends more than 50 pages detailing the timeline of the claim and specifically references the statements and communications made to and by American Family's employees during the claim adjustment process. [Doc. 55-4 at 14–74]. American Family claims that "Mr. Seigal is critical of the timing of exterior asbestos abatement payments" without accounting for the fact that "the information about how the exterior asbestos spill occurred needed to analyze coverage was never provided." [Doc. 55 at 7]. But Mr. Seigal opines that American Family "did not conduct a reasonable investigation . . . as it related to the need for exterior abatement,"

and "[i]t was clear that exterior abatement was necessary from the 12/17/2021 report created by Dynamic Environmental." [Doc. 55-4 at 103]. American Family does not explain how these opinions rely on later-acquired information.[3] To be sure, American Family may believe that its investigation was reasonable and the Dynamic Environmental report was insufficient to establish the need for exterior abatement. But "under *Daubert*, a disagreement with the expert's conclusion is not grounds for exclusion." *North v. Ford Motor Co.*, 505 F. Supp. 2d 1113, 1118 (D. Utah 2007).

American Family next argues that Mr. Seigal fails to set forth a methodology to support his statement that "liability was reasonably clear." [Doc. 55 at 7–9]. American Family equates this statement to an "unfounded assumption that all requested costs were reasonable, covered, and owed." [*Id.* at 9–10]. American Family appears to be specifically concerned that Mr. Seigal will opine that American Family was obligated to reimburse Plaintiff's reconstruction costs based on invoices that American Family contends were insufficient to establish coverage. *See* [*id.* at 8–9].

American Family's interpretation takes Mr. Seigal's statement out of context. In full, the relevant statement in Mr. Seigal's report is:

> Liability was reasonably clear in this matter and the claim was accepted by [American Family]. Nonetheless, [American Family] put [Plaintiff] into a situation where they had to file multiple reports for the abatement process and proof of loss. [American Family] understood the impact on the personal

---

[3] To the extent American Family believes that other opinions in Mr. Seigal's report rely on information not available to American Family at the time of the relevant conduct, American Family fails to identify any such opinions. This Court's Civil Practice Standards require a Rule 702 motion to "specify, with particularity, the opinion(s) that the moving party seeks to exclude and the specific ground(s) on which each opinion is challenged." NYW Civ. Practice Standard 7.1C(b). And the Court cannot and will not make arguments or "comb the record" on a party's behalf. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). The Court thus limits its analysis to the opinions identified and arguments raised in the Motion to Exclude.

> property claim under Coverage B.  The process [American Family] used put
> the Coverage B claim in jeopardy for [Plaintiff].  This influenced the
> settlements under the insurance policy.

[Doc. 55-4 at 103–04].  The Court does not understand this statement to opine that "[l]iability was reasonably clear" for Plaintiff's claimed reconstruction costs, or that American Family was obligated to automatically pay every dollar demanded by Plaintiff.  This portion of Mr. Seigal's opinion exclusively discusses abatement costs and personal property losses, not reconstruction.  Nor do any of the supporting examples used by Mr. Seigal refer to American Family's handling of Plaintiff's claim for reconstruction costs.  *See* [*id.* at 104–07].  And contrary to American Family's fears, Mr. Seigal's limited discussion of the reconstruction costs faults American Family for its delayed response and failure to provide a "rationale" for declining to cover the claimed reconstruction costs—not the sufficiency of Plaintiff's invoices and other supporting documentation.  [*Id.* at 102]; *see also* [*id.* at 98–99, 103 (focusing on American Family's claim-handling process and communications with Plaintiff without addressing adequacy of supporting documentation)].  To the extent American Family believes that Mr. Seigal may exceed the scope of his report with respect to the reconstruction work and adequacy of supporting invoices, it may raise a contemporaneous objection at trial.  Thus, the Court finds that the challenged portions of Mr. Seigal's report do not deviate from his reliable methodology.  The Motion to Exclude is respectfully **DENIED** to the extent American Family challenges Mr. Seigal's methodology.

C.    **Specific Opinions**

American Family also challenges several specific opinions in Mr. Seigal's report that it contends are *ipse dixit*, subjective beliefs, legal conclusions, or impermissible statements about litigation conduct.  [Doc. 55 at 10–14].

1.    *Ipse Dixit*

"Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  To be admissible, expert testimony "must be supported by appropriate validation—i.e., 'good grounds,' based on what is known."  *Daubert*, 509 U.S. at 590.  Although *Daubert*'s reliability analysis generally focuses on the expert's principles and methods rather than his conclusions, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  *Gen. Elec.*, 522 U.S. at 146.

American Family contends that five of Mr. Seigal's opinions are inadmissible *ipse dixit*.  [Doc. 55 at 10].  First, American Family challenges Mr. Seigal's description of American Family's investigation and denial of coverage for Mr. Unrein's and his dog's injuries as "a heavy-handed approach for an insured who AMF knew was unfamiliar with the insurance process."  [Doc. 55-4 at 67].  The Court respectfully disagrees that this statement is *ipse dixit*.  Mr. Seigal reviews the applicable industry standards in earlier portions of his report, including Colorado's good faith standard.  *See* [*id.* at 83–97].  In the later portions of his report, Mr. Seigal uses his experience to apply those standards to the facts of this case.  Mr. Seigal "is not required to precisely identify the standards he relies upon to issue each of his specific opinions."  *Stoker*, 2021 WL 4201583, at *8 (cleaned

up).  And because Mr. Seigal grounds his characterization of American Family's approach as "heavy-handed" in the specific facts of the claim, [Doc. 55-4 at 67], the Court concludes that this statement is not *ipse dixit*.

The Court likewise finds that another challenged opinion is not *ipse dixit* for substantially the same reasons.  This opinion involves Mr. Seigal's criticism of American Family's "negotiating tactic" of offering Mr. Unrein a "lowball" amount to cover his living expenses in order to "force a settlement at a compromised value to [American Family's] benefit."  [*Id.*]; *see also* [*id.* at 103 (similarly criticizing American Family's "negotiation tactics")].  Again, Mr. Seigal sets out the relevant industry standards earlier in his report and specifically discusses certain "[u]nfair claim settlement practices."  *See* [*id.* at 92–93]. He is not required to repeat those standards when opining on American Family's settlement practices as to Mr. Unrein.  *Stoker*, 2021 WL 4201583, at *8.  The Court respectfully concludes that this statement is not *ipse dixit*.

The remaining three challenged opinions relate to Mr. Seigal's references to how other insurers might handle similar claims.  [Doc. 55 at 10].  The opinions are (1) "In my opinion, [American Family] did not manage this claim in accordance with industry standards regularly embraced by carriers *in cases like this one*," [Doc. 55-4 at 77 (emphasis added)]; (2) "[American Family's] claim handling fell short of how *claims like [Plaintiff's] are typically investigated*," [*id.* at 98 (emphasis added)]; and (3) "[American Family] offered [Plaintiff] substantially less than the amounts of insureds *in these types of matters*," [*id.* at 103 (emphasis added)].  American Family argues that Mr. Seigal did not explain what he means by a case "like this one" or clarify what amounts would typically

be offered in a similar case.  [Doc. 55 at 10].  Plaintiff responds that these statements are grounded in "factual observations" based on industry standards.  [Doc. 56 at 10].

The Court agrees with American Family that these opinions are unsupported to the extent they imply that Mr. Seigal has expertise in the specific type of claim at issue.  Mr. Seigal's report and curriculum vitae reflect that he does not specialize in or have particular experience with property damage claims.  [Doc. 55-1; Doc. 55-4 at 2 (describing industry experience in "Liability, Construction Defect, Workers' Compensation, Subrogation, and Health Insurance")].  Nor does his report discuss any comparator cases involving claims "like" Plaintiff's, let alone how such claims would be investigated, adjusted, and settled. Instead, as explained above, Mr. Seigal sets out the relevant industry standards and applies them to the facts of this case.  Although this is a reliable methodology, it does not establish "good grounds" for Mr. Seigal to opine about similar property damage cases. *Daubert*, 509 U.S. at 590.  Mr. Seigal remains free to compare the facts of this case to industry standards in general.   Accordingly, the Motion to Exclude is respectfully **GRANTED** in relevant part, and the three challenged opinions are excluded to the extent they compare this case to other similar cases.

### 2.    Subjective Beliefs or Opinions

American Family next challenges five more opinions as based only on Mr. Seigal's subjective beliefs.  [Doc. 55 at 11].  Plaintiff concedes that three of these opinions are inadmissibly speculative.  [Doc. 56 at 11].  Those opinions involve Mr. Seigal's statements that American Family "utilized a strategy designed to limit its claim costs," was "more concerned with lowering [its] claim costs," and possessed "preconceived thoughts and bias" during the claim-handling process.  [Doc. 55 at 11].  The Court agrees that, as stated

in Mr. Seigal's report, these opinions lack foundation and must be excluded as speculative.  *See O'Sullivan*, 233 F. Supp. 3d at 927 (excluding "speculative opinions surmising what 'may' have motivated [the insurer's] decisions").

The remaining two opinions assert that American Family's employees were "focused on reducing [American Family's] exposure" and hired certain vendors "for this purpose in mind."  [Doc. 55 at 11; Doc. 55-4 at 76, 105].  In Plaintiff's view, Mr. Seigal's conclusion that American Family sought to reduce its exposure is grounded in factual observations.  [Doc. 56 at 11].  Plaintiff appears to concede, however, that claiming American Family had a certain "purpose in mind" is improper speculation.  [*Id*.].

The Court agrees with American Family that, as presented in Mr. Seigal's report, these statements improperly assign a motive to American Family and its employees.  Mr. Seigal does not adequately provide a factual basis for his opinions about the "purpose" of certain actions or what certain employees were "focused on."  *Pacheco*, 2024 WL 3834166, at *7 (excluding opinion that insurer's conduct "seem[ed] intentionally designed to create the foundation for a value dispute"); *Ganison v. State Farm Mut. Auto. Ins. Co.*, No. 22-cv-02914-NYW-KAS, 2024 WL 4135200, at *15 (D. Colo. Sept. 9, 2024) (excluding "statements lacking foundation as to what State Farm was 'attempting' to do"). At trial, Mr. Seigal may be able to lay adequate foundation for his claim that American Family hired vendors "to reduce the exposure [it] had with CAT."  [Doc. 55-4 at 76].  But as presented in his report, this opinion relies on Mr. Seigal's speculation about American Family's "purpose in mind" rather than specific factual observations.  Thus, the Motion to Exclude is respectfully **GRANTED** in relevant part, and the Court excludes the challenged opinions regarding American Family's motives or purpose.  The Court will revisit this issue

at trial as appropriate.  *See O'Sullivan*, 233 F. Supp. 3d at 927 (excluding testimony about insurer's motives "to the extent [the expert's] testimony follows from his written report," but noting that the court would determine at trial whether the expert had laid sufficient foundation for his trial testimony).

### 3.    Legal Conclusions

American Family asks the Court to exclude several of Mr. Seigal's statements that American Family believes are legal conclusions.  [Doc. 55 at 12–13].  In these statements, Mr. Seigal opines that American Family's conduct was "unreasonable," violated the "standards of good faith and fair dealing," and "occurred intentionally or with reckless disregard."  *See* [Doc. 55-4 at 97–98, 103, 107].  Plaintiff claims that it is "permissible conduct" for Mr. Seigal to "determin[e] whether American Family departed from" the "applicable legal standards."  [Doc. 56 at 12].

Federal Rule of Evidence 704(a) "allows an expert witness to testify in the form of an opinion or inference even if that opinion or inference embraces an ultimate issue to be determined by the trier of fact."  *A.E. ex rel. Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991).  A witness may "aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."  *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988).  But as this Court explained in *Pacheco*, "it is well-established that an expert may not 'state legal conclusions drawn by applying the law to the facts.'"  2024 WL 3834166, at *10 (quoting *Evans*, 936 F.2d at 476).  "[S]uch ultimate conclusions would not be helpful to the jury and would improperly intrude on its fact-finding function."  *O'Sullivan*, 233 F. Supp. 3d at 929.  Accordingly, "courts routinely preclude experts from opining about whether an insurer acted reasonably or

unreasonably in the handling of an insured's claim."  *Pacheco*, 2024 WL 3834166, at *10
(collecting cases).

Consistent with these principles, the Court will permit Mr. Seigal to testify about
insurance industry standards and why he believes American Family deviated from those
standards in this case.  He may also "testify generally about his understanding of the law
and how it impacts his understanding of the standards that govern the insurance industry."
*Lua v. QBE Ins. Corp.*, No. 18-cv-01233-KLM, 2019 WL 5104477, at *5 (D. Colo. Oct. 11,
2019).   But Mr. Seigal may not testify about whether American Family acted
unreasonably, in bad faith, or knowingly or recklessly.  Nor may he opine about American
Family's legal obligations and whether it complied with them.  *See, e.g.*, *O'Sullivan*, 233
F. Supp. 3d at 929 (limiting insurance industry expert's testimony along similar lines).  The
Motion to Exclude is respectfully **GRANTED** to the extent American Family seeks to limit
Mr. Seigal's testimony in this manner.

### 4.    Opinions About Litigation Conduct

Finally, American Family seeks to exclude opinions in Mr. Seigal's report about
American Family's conduct during this litigation.  [Doc. 55 at 13].  For instance, Mr. Seigal
states that American Family's "claim manual was provided on the eve of the plaintiff's
expert report being due."  [Doc. 55-4 at 82].  Mr. Seigal also opines that based on his
review of the Parties' discovery disclosures, "there appears to be redactions that were
taken which are routinely disclosed in cases like this one."  [*Id.* at 82, 97].  American
Family contends that Plaintiff has not shown sufficient facts to permit admission of these
opinions under Rules 702 and 403.  [Doc. 55 at 13–14].

When examining evidence of an insurer's litigation conduct in a bad faith case, courts distinguish attorney litigation conduct from insurer conduct that happens to occur after litigation has commenced.  *See Rabin v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1116 (D. Colo. 2012); *Parsons ex rel. Parsons v. Allstate Ins. Co.*, 165 P.3d 809, 817 (Colo. App. 2006).  Evidence of insurer conduct during litigation is not necessarily inadmissible, because "bad faith may encompass an entire course of conduct and can be cumulative."  *Rabin*, 863 F. Supp. 2d at 1116 (quoting *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012)).  For instance, if liability becomes "reasonably clear" after litigation has begun and the insurer fails to promptly and fairly settle the claim, such conduct may be admissible as evidence of bad faith.  *Parsons*, 165 P.3d at 817 (citing Colo. Rev. Stat. § 10-3-1104(1)(h)(VI)).

But because a bad faith claim focuses "on the decision to refuse to make or delay making payments owed under an insurance policy, . . . the relevance of litigation conduct by an attorney after the refusal or delay has occurred may be limited."  *Id.*  Put differently, "while evidence of an insurer's litigation conduct may, in some rare instances, be admissible on the issue of bad faith, such evidence will generally be inadmissible, as it lacks probative value and carries a high risk of prejudice."  *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 341 (10th Cir. 1995) (applying Oklahoma law); *Parsons*, 165 P.3d at 816 (citing *Timberlake* with approval).  Permitting evidence of attorney litigation conduct could create ethical dilemmas for attorneys if they become necessary witnesses, incentivize attempts to obtain privileged information, and impose a "chilling effect" on "legitimate litigation conduct" by insurers' counsel.  *Timberlake*, 71 F.3d at 341; *Parsons*, 165 P.3d at 817.  Other avenues are available to regulate attorney conduct, and

discovery issues may be raised to the court in an appropriate motion.[4]  *Parsons*, 165 P.3d at 817–18; *Timberlake*, 71 F.3d at 341.

Accordingly, both *Timberlake* and *Parsons* propose subjecting evidence of attorney litigation conduct to a balancing test that weighs the probative value of such evidence against the likely prejudice and confusion that would result from presenting the evidence to the jury.  *Timberlake*, 71 F.3d at 341; *Parsons*, 165 P.3d at 818.  *Timberlake* suggests that the usual test under Rule 403 should apply, which would exclude the evidence "if its probative value is substantially outweighed by a danger of," among other things, "unfair prejudice" or "confusing the issues."  Fed. R. Evid. 403; *Timberlake*, 71 F.3d at 341.  *Parsons* endorses a heightened standard, closer to the one used in Rule 412(b)(2), in which evidence of attorney litigation conduct may be admitted if the "risks of unfair prejudice" and the like are "substantially outweighed by the probative value of the evidence."  *Parsons*, 165 P.3d at 818; *see also* Fed. R. Evid. 412(b)(2).  Either way, a plaintiff seeking to introduce evidence of attorney litigation conduct "must make a specific showing of 'extraordinary facts'" to demonstrate that this is the rare instance where such evidence is admissible in a bad faith case.  *Toy v. Am. Fam. Mut. Ins. Co.*, No. 12-cv-01683-PAB-MJW, 2014 WL 485922, at *2 (D. Colo. Feb. 6, 2014) (quoting *Parsons*, 165 P.3d at 819).

Plaintiff has shown no such facts here.  Despite American Family's citation to *Toy*, Plaintiff fails to address American Family's legal arguments or respond to the issue of prejudice.  *Compare* [Doc. 55 at 13–14], *with* [Doc. 56 at 13–14].  Plaintiff only makes the cursory argument that Mr. Seigal's opinions about American Family's litigation conduct

---

[4] Plaintiff has not filed any motions alleging discovery violations by American Family.

are based on industry standards and grounded in factual obligations.  [Doc. 56 at 13–14].

This does not explain why American Family's attorneys' discovery practices are probative

of American Family's alleged bad faith in handling Plaintiff's claim.  Nor is it clear to the

Court that Mr. Seigal's discovery-related opinions are based on industry standards.  His

citation to Judge Varholak's ruling on discovery issues in *Menapace v. Alaska National*

*Insurance Co.*—which involved application of the work product protection and attorney-

client privilege—suggests that these opinions are rooted in Mr. Seigal's understanding of

discovery rules rather than his expertise in insurance claim handling.  *See* [Doc. 55-4 at

97]; *see also Menapace v. Alaska Nat'l Ins. Co.*, No. 20-cv-00053-REB-STV, 2020 WL

6119962 (D. Colo. Oct. 15, 2020).

Thus, the Motion to Exclude is respectfully **GRANTED** to the extent American

Family seeks to exclude Mr. Seigal's opinions regarding discovery practices by American

Family's counsel.  The Court reserves for trial any ruling on evidence of post-litigation

conduct by American Family itself.  *See Cribari v. Allstate Fire & Cas. Co.*, No. 16-cv-

02450-NRN, 2019 WL 2436045, at *6 (D. Colo. June 11, 2019) (reserving ruling on

insurer's "post-litigation conduct").

## II.    Motion in Limine

Plaintiff's Motion in Limine asks the Court to prevent American Family from

"rais[ing] the issue of designation of non-party at fault with respect to all three claims of

Plaintiff at trial."  [Doc. 61 at 7].  Plaintiff contends that no liability can be assigned to CAT

for any of Plaintiff's three claims, so it would be improper for American Family to invoke

CAT's fault at trial.  *See* [*id.* at 3–6].  American Family's responds that CAT's fault is at

least relevant to the common law bad faith claim. [Doc. 66 at 3–4]. The Court respectfully agrees with Plaintiff.

Colorado's nonparty-at-fault statute provides that:

> In an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss."

Colo. Rev. Stat. § 13-21-111.5(1). If a defendant seeks to reduce its liability based on the "fault of a nonparty," it must file a notice designating the nonparty and providing a "brief statement of the basis for believing such nonparty to be at fault." § 13-21-111.5(3)(b). The statute also provides that "[j]oint liability shall be imposed on two or more persons who consciously conspire and deliberately pursue a common plan or design to commit a tortious act." § 13-21-111.5(4).

The Parties do not contend—nor has this Court's independent research revealed—that the Colorado Supreme Court has squarely addressed whether a nonparty's fault may be asserted under § 13-21-111.5 as a defense to a breach-of-contract claim or claims for statutory or common law bad faith. But because this Court sits in diversity, it must "apply state law with the objective of obtaining the result that would be reached in state court." *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Thus, the Court follows the Colorado Supreme Court's decisions where applicable and otherwise relies on the decisions of the Colorado Court of Appeals absent "convincing evidence that the highest court would decide otherwise." *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1204 (10th Cir. 2011) (quotation omitted).

A.    **Breach of Contract Claim**

With respect to Plaintiff's breach of contract claim, the Colorado Court of Appeals has repeatedly held that "section 13-21-111.5(1) doesn't apply to breach of contract claims." *Heights Healthcare Co. v. BCER Eng'g, Inc.*, 534 P.3d 939, 946 (Colo. App. 2023); *see also Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 300 P.3d 963, 976 (Colo. App. 2014) ("[B]ecause a breach of contract is not a tortious act, such a breach does not fall within the meaning of 'fault' as used in subsections (1) and (3)."); *Taylor Morrison of Colo., Inc., v. Bemas Constr., Inc.*, 411 P.3d 72, 80 (Colo. App. 2014) ("Taylor's breach of contract claim against Bemas was not subject to allocation of damages based on the comparative fault of the parties."); *Just in Case Bus. Lighthouse, LLC v. Murray*, 383 P.3d 1, 16 (Colo. App. 2013) ("[Section 13-21-111.5(3)] applies to 'any conduct other than breach of contract that constitutes a civil wrong and causes injury or damages.'" (quoting *Core-Mark*, 300 P.3d at 976)), *aff'd in part, rev'd in part on other grounds*, 374 P.3d 443 (Colo. 2016).  While neither Party addresses this line of cases, the Court perceives no "convincing evidence" that the Colorado Supreme Court would reach a different conclusion.  *See Commonwealth Prop. Advocs.*, 680 F.3d at 1204.  The earliest of these decisions, *Core-Mark*, drew on Colorado Supreme Court precedent interpreting § 13-21-111.5 in other contexts.  300 P.3d at 976 (first citing *Resol. Tr. Corp. v. Heiserman*, 898 P.2d 1049, 1055 (Colo. 1995); and then citing *Slack v. Farmers Ins. Exch.*, 5 P.3d 280, 286 (Colo. 2000)).  And in the Response, American Family does not address the breach of contract claim at all, instead focusing its efforts on whether a nonparty's fault may be asserted against a bad faith claim.  *See* [Doc. 66].  Accordingly, the Court finds the *Core-*

*Mark* line of cases persuasive and respectfully concludes that the comparative fault rules set out in § 13-21-111.5 cannot be applied to a breach of contract claim.

### B.    Bad Faith Claims

The Court reaches a similar conclusion for Plaintiff's bad faith claims.    First, regarding the common law bad faith claim, the Court cannot necessarily apply *Core-Mark* to this claim because a common law bad faith claim arises in tort.    *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004).  The tort liability flows from the "special nature of the insurance contract and the relationship which exists between the insurer and the insured."  *Id.* (quotation omitted).  Thus, when an insurer fails to act in good faith by unreasonably refusing to pay a claim, the insured may bring a tort claim instead of, or in addition to, simply suing to enforce the contract itself.  *Id.*  But the mere fact that a common law bad faith claim sounds in tort does not permit American Family to invoke CAT's fault under § 13-21-111.5.

American Family argues that liability for Plaintiff's common law bad faith claim can be assigned to CAT because the damages caused by CAT "overlap" with the damages caused by American Family's denial of coverage.  [Doc. 66 at 9–10].  For support, American Family cites a Colorado Court of Appeals decision for the proposition that "[w]hile it may not be necessary that the acts on the part of the designated nonparty have been the same tortious acts as those of a defendant, it is still necessary that the conduct of any party to be prorated have been a cause of 'the claimed injury, death, damage, or loss.'"  [*Id.* at 5]; *Fried v. Leong*, 946 P.2d 487, 489 (Colo. App. 1997) (first citing *Moody v. A.G. Edwards & Sons, Inc.*, 847 P.2d 215 (Colo. App. 1992); and then quoting Colo. Rev. Stat. § 13-28-111.5(1)).  Although the Court agrees that *Fried*'s understanding of the

plain language of § 13-28-111.5 is on point, American Family misapprehends the precise "injury" that Plaintiff asserts in this case. In a common law bad faith case, "[t]he basis for tort liability is the insurer's conduct in unreasonably refusing to pay a claim and failing to act in good faith, not the insured's ultimate financial liability." *Goodson*, 89 P.3d at 414. In other words, Plaintiff's "claimed injury" is American Family's alleged unreasonable denial of coverage rather than the underlying property damage.[5] CAT may have contributed to the underlying losses for which Plaintiff requested coverage, but American Family does not explain how CAT could be at fault for American Family's handling of its insured's claim. *See Avalon Condo. Ass'n, Inc. v. Secura Ins.*, No. 14-cv-00200-CMA-KMT, 2014 WL 3631760, at *3 (D. Colo. July 23, 2014) (striking designation of nonparty at fault where defendant asserted that nonparties "may have contributed to the damage to [p]laintiff's roof," but none of those nonparties contributed to the insurer's alleged failure to deal in good faith); *cf. Harvey v. Farmers Ins. Exch.*, 983 P.2d 34, 39 (Colo. App. 1998) ("In an ordinary claim for bad faith breach of an insurance contract, where the plaintiff seeks damages for the insurance company's bad faith refusal to pay benefits, it would be incongruous for the jury to be instructed to apportion fault to a non-party independent medical examiner."), *aff'd sub nom.*, *Slack*, 5 P.3d 280. The Court concludes that it would

---

[5] Defendant asserts that Plaintiff also seeks consequential or compensatory damages that were not included in the final coverage demand, [Doc. 62-51 at 1], such as Plaintiff's legal fees from separate proceedings involving CAT, [Doc. 66 at 9]. If that were true, such damages may require additional analysis. But Plaintiff asserts in its Reply, [Doc. 67 at 4–5], that its claimed damages are limited to the reconstruction, abatement, and personal property costs enumerated in Plaintiff's coverage demand letter, [Doc. 62-51 at 1], and reiterated in Plaintiff's Response to American Family's Motion for Summary Judgment, [Doc. 65 at 11 & n.3]. The Court accepts Plaintiff's counsel's representations as binding on Plaintiff, and limits its analysis to the damages Plaintiff will seek at trial.

be improper to assign any "fault" to CAT for American Family's alleged breach of its duty of good faith and fair dealing.

This reasoning applies to Plaintiff's statutory bad faith claim with equal force. Like the common law bad faith claim, the relevant injury is an "unreasonabl[e] delay or den[ial] [of] payment of a claim for benefits owed." Colo. Rev. Stat. § 10-3-1115(1)(a). American Family does not contend that CAT contributed to American Family's alleged unreasonable denial of Plaintiff's claim for benefits under the Policy. Nor does American Family assert any other arguments regarding this claim. *See* [Doc. 66]. Accordingly, based on *Fried* and the plain text of § 13-21-111.5, the Court concludes that American Family's designation of CAT as a nonparty at fault was improper. Plaintiff's Motion in Limine is respectfully **GRANTED**, and American Family is precluded from raising the issue of CAT's fault at trial.[6]

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)    American Family's Motion to Exclude or Limit Brian Seigal Pursuant to Fed. R. Evid. 702 [Doc. 55] is **GRANTED in part** and **DENIED in part**;

---

[6] In so ruling, the Court does not preclude all evidence of CAT's conduct. For instance, CAT's alleged mishandling of the asbestos abatement at the Property may be relevant to the reasonableness of American Family's handling of Plaintiff's claim. And, at least in theory, American Family remains free to argue that Plaintiff's damages were not proximately caused by its conduct. *Goodson*, 89 P.3d at 415 (explaining that recovery on a common law bad faith claim is "based on traditional tort principles" and the plaintiff must establish its damages by a preponderance of the evidence); *see also Fried*, 946 P.2d at 490 (distinguishing statutory pro rata liability rules under § 13-21-111.5 from the doctrine of apportionment); *Coomer v. Lindell*, No. 22-cv-01129-NYW-SBP, 2024 WL 3989524, at *15 (D. Colo. Aug. 29, 2024) (concluding that determining whether plaintiff's injuries stemmed from defamatory statements by defendants or statements by nonparties was "a matter of apportioning damages and untangling causation firmly within the jury's province at trial, not the stuff of comparative fault designations under § 13-21-111.5").

(2)   Plaintiff's Motion *in Limine* to Prevent Defendant from Raising the Issue of Designation of Non-Party at Fault at Trial [Doc. 61] is **GRANTED**;

(3)   Mr. Seigal's testimony is limited as set forth herein; and

(4)   American Family is precluded from raising the issue of CAT's fault at trial.

DATED:  September 25, 2025          BY THE COURT:

_____
Nina Y. Wang
United States District Judge